2017 Nov-01 PM 05:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BIRMINGHAM EMERGENCY COMMUNICATIONS DISTRICT,**     **Plaintiff,** **vs.** **LEVEL 3 COMMUNICATIONS, LLC AND LEVEL 3 COMMUNICATIONS, INC.,**     **Defendants.** | Civil Action Number **2:15-cv-01088-AKK** |

## **MEMORANDUM OPINION AND ORDER**

This case arises out of a dispute over the appropriate discharge of duties imposed by the Alabama Emergency Telephone Services Act, Alabama Code § 11-98-1 *et seq*. (1975) (the ETSA).[1] The Birmingham Emergency Communications District (the District) raises numerous claims alleging that Level 3 Communications, LLC and Level 3 Communications, Inc. (collectively Level 3) violated the ETSA by failing to properly report, collect, and remit required 911 charges on thousands of active telephone lines. The court has already ruled on Level 3's previous motion to dismiss finding that, while most of the District's claims may go forward, the District's claim for fraud failed to meet the heightened

---

[1] The claims in this lawsuit relate only to obligations imposed by the ETSA prior to its amendment on October 1, 2013. Docs. 25 at 4; 27-1 at 6. Accordingly, all citations to the ETSA in this opinon reference the version of the ETSA in effect prior to that date.

pleading standard imposed by Fed. R. Civ. P. 9(b) and was due to be dismissed. *See* Doc. 25 at 1–2. The District has now filed an opposed Motion for Leave to File First Amended Complaint, doc. 27, in an attempt to cure the deficiencies identified by the court in its prior ruling. That motion is now fully briefed, docs. 30; 34, and ripe for review. After consideration of the parties' briefs and the record, the court finds that the District's motion is due to be granted.

## I.  Standard of Review

Federal courts generally follow the view that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [she] ought to be afforded an opportunity to test [her] claims on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Federal Rules of Civil Procedure buttress this conclusion, and provide that the court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). However, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004). The Eleventh Circuit has explained that an amendment is futile if "'the complaint as amended is still subject to dismissal.'" *Id.* at 1263 (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

## II. Facts

Given the court's prior ruling in this case and the parties undoubted familiarity with the record, the court provides only a brief overview of the relevant facts. The ETSA was enacted by the Alabama legislature to authorize the creation of "communications districts for the purpose of establishing local emergency telephone service and to provide funding for such service." *T-Mobile South, LLC v. Bonet*, 85 So. 3d 963, 967 (Ala. 2011). The District was created pursuant to this authorization in order to provide emergency telephone services for Birmingham, Alabama. Doc. 27-1 at 2, 5. The District receives most of its funding from telephone service suppliers who are required to bill, collect, and remit to the District a small service fee assessed to residential and business telephone users. *Id.* at 2–6. For providers of voice over internet protocol (VoIP) services, like Level 3, the ETSA requires the assessment of a service charge for each assigned ten-digit access number, excluding those provided to a person or entity otherwise exempt from taxation. *See* ALA. CODE §§ 11-98-18, 11-98-5, 11-98-5.1.

Pursuant to its undisputed obligations under the ETSA, Level 3 provided monthly 911 remittance forms to the District. Doc. 30-1 at 3–5. The forms provided information to the District regarding the number of "gross units" and the number of "exempt units" Level 3 serviced. Doc. 27-1 at 13. The parties have not directed this court to specific reporting requirements in the ETSA, nor has the

court located any such provision on its own. Instead, the ETSA provides only that a form, the contents of which are agreed upon between the service supplier and the District, is filed in connection with the service supplier's remittance of the amount of the 911 service charge payable to the District. *See* ALA. CODE § 11-98-5(e). Likewise, the ETSA does not provide specific definitions for "gross units," "exempt units," or units that are simply "excluded" from the Act. The District asserts that it understood gross units, as reported on Level 3's remittance form, to mean "active telephone numbers." Doc. 27-1 at 13.[2]

The District alleges that in an attempt to provide services at a lower cost and gain a competitive edge over its competitors, Level 3 billed, collected, and remitted only a fraction of the ten-digit access numbers provided to its VoIP customers. Doc. *Id.* at 7–8. Significant here, the District alleges that Level 3 incorrectly designated thousands of numbers as "in-bound" only, and purportedly did not disclose the existence of those numbers on the remittance forms it submitted. *Id.* at 7. The District further alleges that Level 3 provided active telephone numbers wholesale to "resellers," who actually supplied end-user service, and similarly did not report those numbers on its remittance forms. *Id.* More broadly, the District claims that Level 3 had "tens of thousands of unreported active telephone numbers within the district" that it failed to properly report to the District. *Id.* at 15.

---

[2] Other than this allegation, neither party has presented evidence related to any agreement regarding the proper format of the remittance form Level 3 provided to the District each month.

**III. Discussion**

Level 3 argues that the District's proposed amendment to the complaint is futile because the ETSA does not require Level 3 to report telephone lines designated "in-bound" only, or lines that were sold, wholesale, to other service suppliers, and because the complaint does not satisfy the heightened pleading standards imposed on fraud claims by Fed. R. Civ. P. 9(b). The court addresses each argument in turn.

### A. *Level 3's Purported Compliance with the ETSA as a Matter of Law*

As Level 3 identifies, the gist of the District's fraud claim is that Level 3's 911 service charge remittance forms failed to disclose the existence of thousands of active telephone numbers. The District alleges that, even if Level 3 was not obligated under the ETSA to bill, collect, or remit a service charge for those numbers, the ETSA still required Level 3 to report those numbers as "gross" but "exempt" on its monthly remittance form. Doc. 27-1 at 15. Level 3 counters that these unreported numbers consist of "in-bound" only numbers and numbers it provided wholesale to other service providers, categories of service that are simply excluded from the duties imposed by the Act. Moreover, Level 3 argues that the "gross units" figure it provided to the District accurately reflected the gross number of units actually within the scope of the ETSA. Thus, Level 3 asserts that

it could not have misrepresented anything, and that it accurately provided the District with the gross units it had a duty to collect and remit service fees for.

As previously noted, the ETSA does not appear to create any particularized reporting requirements for telephone service providers, and instead allows service suppliers to work out reporting arrangements with individual Emergency Communications Districts. *See* ALA. CODE § 11-98-5(e). The ETSA also does not specifically define particular types of services as "exempt" or as "excluded." The Act simply provides that "each provider of VoIP or similar service [shall] collect [a service] fee for each 10-digit access number assigned to the user." ALA. CODE § 11-98-5.1(c). So, the 911 remittance form provided by Level 3 in connection with its duties under the ETSA was not itself governed by the statute. Instead, the form was simply intended to facilitate Level 3's compliance with its required duties to collect and remit fees for each 10-digit access number that it serviced.

As a result, at this stage of the proceeding, even if this court were to accept Level 3's argument that "in-bound" only lines do not have access to the 911 network and are consequently outside the scope of the ETSA's billing requirements, a factual question would remain concerning whether Level 3 properly classified the unreported lines as "in-bound" only. Indeed, the District's proposed amended complaint specifically provides, among other things, that Level 3 "billed, collected, and remitted 911 charges for only a fraction of the ten-digit

access numbers provided to VoIP customers," and that Level 3 "did not bill, collect, and remit a 911 charge to the District for thousands of 10-digit access numbers that it provided to users of VoIP technology." Doc. 27-1 at 3, 5; *see also id.* at 16. These allegations, accepted as true, suggest that Level 3 serviced active numbers, capable of accessing 911, that were neither properly reported to the District or assessed a service charge. This is sufficient to underpin a plausible claim that Level 3's remittance forms misrepresented the service fees due to the District. Whether the District can ultimately sustain its burden and prove its claims is a matter for another day. At this stage, Level 3 need only provide enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting its claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Similarly, Level 3's reporting method could have, and apparently did, mislead the District by completely excluding numbers that Level 3 unilaterally determined were not subject to ETSA service fees, whether "wholesale" or "inbound" only, from the "gross units" reported in its remittance forms. Doc. 27-1 at 13, 15. As explained, the ETSA does not appear to define the term "gross units," and imposes no specific reporting requirement on service providers. Instead the Act leaves it to particular Emergency Communications Districts to establish reporting requirements for service providers within their jurisdiction. So, even if Level 3 believed it properly classified numbers for which it had no duty to bill,

7

collect, or remit service charges, the failure to list those units as "gross units" still could have misled the District. And, as the District alleges, it was so misled by Level 3's reporting because it assumed it was receiving all the service fees it was entitled to under the ETSA and failed to take the steps it otherwise would have to collect outstanding fees. *Id.* at 12, 15–16.

Of course, to succeed on a fraud claim, the District will need to prove damages. *See Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000). So, to the extent that Level 3 indeed only failed to report numbers that are not subject to a fee under the ETSA, the District may fail to meet the damages requirement for a prima facie case. However, that factual determination is properly made on summary judgment. At this stage of the proceeding, it is enough that the District has alleged, that access numbers subject to a service charge were not properly reported.

*B. Level 3's Alleged Failure to Plead Fraud with Particularity*

Level 3 also argues that, even as amended, the District's fraud claim (count V) lacks the requisite specificity to meet the heightened pleading standard imposed by Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must allege "(1) precisely what statements or omissions were made in which documents . . .; (2) the time and place of each such statement and the person responsible for making . . . them; (3) the content of such statements and the manner in which they misled the plaintiff;

and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). Notably, Level 3 does not argue that the amended complaint fails to cure the deficiencies this court pointed out in its previous order.[3] Instead, Level 3 primarily contends that the District fails to allege with particularity how the remittance forms Level 3 submitted were false, and that the District simply claims tens of thousands of active phone numbers were not reported without specifically identifying those numbers or explaining why Level 3 should have included those numbers on its remittance forms. Level 3 further argues that if it lacked the specific duty to bill, collect, or remit service fees from particular numbers, then the District could not

---

[3] In light of this failing, the court concludes that the deficiencies it previously indicated have been cured by the proposed amendment to the complaint. *See* Doc. 25 1–2; *Birmingham Emergency Commc'ns Dist. v. TW Telecom Holdings, Inc.*, case no: 2:15-cv-00245-AKK, doc. 30 at 17. In its prior ruling, the court specifically identified that the District's initial complaint failed to allege the precise misrepresentations made and the dates of those misrepresentations. *Birmingham Emergency Commc'ns Dist.*, case no: 2:15-cv-00245-AKK, doc. 30 at 17. To cure this deficiency, the amended complaint provides a list of the dates Level 3 submitted the purportedly fraudulent remittance forms, the reporting periods covered by those forms, and the numbers of gross and exempt units identified on the forms. Doc. 27-1 at 13–15. Further, the District alleges the number of underreported units for two months, July and September 2013. Doc. 27-1 at 15–16. The court notes that although Rule 9(b) requires increased particularity, this heightened standard "'must not abrogate the concept of notice pleading.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)). Here the court finds that the District has provided sufficient factual allegations to put Level 3 on notice as to the "who, where, when, how, and why" of its fraud claim. *Fla. Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, 46 F. Supp. 2d 1276, 1282 (M.D. Fla. 1999) (quotation omitted); *see also Barys ex rel. United States v. Vitas Healthcare Corp.*, 298 F. App'x 893, 897 (11th Cir. 2008) (noting that the Rule 9(b) pleading requirements could potentially be relaxed in circumstances where the facts "relating to fraud are 'peculiarly within the perpetrator's knowledge.'") (quoting *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003)).

have relied on the omission of those numbers from the remittance forms nor could it suffer damage from those omissions. These arguments are unavailing.

This court has previously found that the District has adequately alleged how it was misled, and damaged, by Level 3's purported omission of all of its active telephone numbers in the district because "the reports led the District to believe it was receiving all the 911 charges it was entitled to under the ETSA," and because the District was dependent upon Level 3 to provide accurate information about its service offerings since it lacked the means to independently verify that information. *Birmingham Emergency Commc'ns Dist. v. TW Telecom Holdings, Inc.*, case no: 2:15-cv-00245-AKK, doc. 30 at 17; Doc. 27-1 at 16. While it is true that, under Alabama law, "[r]eliance requires that the misrepresentation actually induced the injured party to change its course of action," *Exxon Mobil Corp. v. Alabama Dep't of Conservation & Nat. Res.*, 986 So. 2d 1093, 1116 (Ala. 2007) (quotation omitted), the District has pleaded sufficient facts to meet that requirement here.

Among other things, the District plausibly alleges that Level 3 purportedly failed to report all of its active units as gross units and to identify units for which fees were not being collected as exempt, and that the District was reliant on this information to determine the scope of Level 3's service offerings and the amount of fees it was entitled to receive under the ETSA. Doc. 27-1 at 15–16. This chain

of factual allegations leads to the reasonable inference that because the District lacked the information needed to pursue fees from improperly exempted active telephone lines it received less money than it otherwise would have. This conclusion is further buttressed by the District's allegation that it "reasonably relied on the false information provided by the Defendants . . . in accepting the 911 Charge remittances." *Id.* at 16. This statement, though brief, makes clear that, but for the alleged misrepresentations by Level 3, the District would not have accepted only a partial amount of the remittance it was allegedly due.

Still, if Level 3 is correct that it was not responsible for collecting or remitting a service charge on the lines it failed to include in its remittance forms, then it will prove difficult to discern how the District was damaged by the omission of those lines. This argument, however, puts the cart before the horse because it presumes that the active numbers serviced by Level 3 and omitted from its remittance forms were properly excluded. At this stage of the proceeding, the court must accept as true the District's factual allegations that Level 3 improperly classified and failed to report active numbers, owing a service charge, on its remittance forms. Accordingly, the District has adequately alleged damages based on its detrimental reliance theory that Level 3's failure to disclose all the active telephone numbers it provided in the district as gross units and then reporting as exempt those units it believed it had no duty to collect service charges for

11

prevented the District from identifying improperly exempted numbers and collecting all the fees it was due.

Accordingly, the District's Motion for Leave to File First Amended Complaint, doc. 27, is **GRANTED**. The District is **DIRECTED** to file the proposed first amended complaint as a separate docket entry.

**DONE** the 1st day of November, 2017.

*[signature: Abdul Kallon]*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE