# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BIRMINGHAM EMERGENCY COMMUNICATIONS DISTRICT;** ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) ) | **CASE NO.: 2:15-CV-01088-AKK** |
| ) ) | **DEMAND FOR JURY TRIAL** |
| **LEVEL 3 COMMUNICATIONS, LLC AND LEVEL 3 COMMUNICATIONS, INC.;** ) ) ) ) | |
| **Defendants.** ) | |

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Birmingham Emergency Communications District ("the District") and submits this First Amended Complaint against Defendants Level 3 Communications, LLC and Level 3 Communications, Inc. (collectively referred to as "the Defendant").

## SUMMARY OF COMPLAINT

1. The District is an Emergency Communications District ("ECD") that provides critical emergency 911 services to citizens in their respective districts and others who visit and travel through Birmingham, Alabama. These services, like the services of other ECDs, are a central component of the public safety and emergency preparedness system. The District's 911 services allow emergency response personnel to be promptly directed to the scenes of emergencies, dangers,

and disasters; they have, thus, saved countless lives and provided invaluable benefits to the community.

2. The District's 911 services are principally funded by emergency telephone service charges ("911 Charges"), which are collected from users of business and residential telephone services.

3. Defendant provides business telephone service through Voice over Internet Protocol service or "VoIP." For the period in question, Alabama law required the Defendant to bill, collect, report, and remit 911 Charges for every ten-digit access number provided to customers with VoIP or similar telephone service. Alabama law did not exempt telephone numbers identified or provisioned as "in-bound only."

4. Defendant did not bill, collect, or remit 911 Charges on its telephone service in accordance with Alabama law. To the contrary, Defendant billed, collected, and remitted 911 Charges for only a fraction of the ten-digit access numbers provided to VoIP customers. In so doing, it has deprived the District of the revenue needed to provide critical, lifesaving, emergency services. By billing and collecting less than the required amount of 911 Charges, Defendant was able to offer its services at a lower cost to customers and, thereby, gained a competitive advantage over other telephone service providers who comply with the law.

5. The District seeks recovery of damages related to the unpaid 911 Charges, along with interest, costs, and expenses as allowed by law.

## THE PARTIES, JURISDICTION, AND VENUE

6. The Birmingham Emergency Communications District is a political and legal subdivision of the State of Alabama with the power to sue and be sued under Federal Rule of Civil Procedure 17(b). It was created by the governing body of the City of Birmingham, Alabama.

7. Level 3 Communications, LLC is a limited liability company organized under Delaware law with its principal place of business in Colorado. Its sole member is Level 3 Communications, Inc., which is also organized under Delaware law and has its principal place of business in Colorado. Level 3 Communications, LLC and its affiliates, including Level 3 Communications, Inc., collectively provide wired telephone service within the District's geographical territory.

8. Level 3 Communications, Inc. is, as set forth above, organized under Delaware law and has its principal place of business in Colorado. Level 3 Communications, Inc. and its affiliates, including Level 3 Communications, LLC, collectively provide wired telephone service within the District's geographical territory.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the District and the Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this Court under 28 U.S.C. § 1391 because the District is located in and has its principal operations within the Northern District of Alabama and because the Defendant "resides" within the Northern District of Alabama.

## FACTUAL ALLEGATIONS

11. Alabama has enacted the Emergency Telephone Services Act, Alabama Code § 11-98-1, *et seq.* ("the ETSA"), providing for the creation of ECDs, such as the District, in order to establish local emergency telephone service commonly referred to as "911 Service." The ETSA provides for the funding of these ECDs by assessing a charge on exchange access lines and VoIP telephone service.

12. At all times relevant to this action, the District assessed valid 911 Charges on all business and residential telephone service in the City of Birmingham.

13. The District, under the supervision of its board, operates extensive facilities staffed by trained personnel 24 hours a day, 7 days a week, who receive 911 telephone calls and transmit emergency information to the proper authorities.

14. The District relies on 911 Charges to provide emergency, often life-saving, services.

15. Defendant provides, and at all relevant times provided, VoIP telephone service to customers in the City of Birmingham.

16. Prior to October 1, 2013, the ETSA required telephone service suppliers, such as Defendant, to bill, collect, and remit 911 Charges to the District for every 10-digit access number assigned to VoIP users, excluding those provided to a person or entity otherwise exempt from taxation. *See* Ala. Code § 11-98-5.1 (stating: "It shall be the duty of each provider of <u>VoIP or similar service</u> to collect the [911 charge] for each 10-digit access number assigned to the user and to remit such fee as provided in Section 11-98-5.") (pre-October 1, 2013 amendment).

17. The Defendant failed to bill, collect, and remit 911 Charges in accordance with this law. In particular, the Defendant did not bill, collect, and remit a 911 Charge to the District for thousands of 10-digit access numbers that it provided to users of VoIP technology. In doing so, the Defendant caused the District to suffer a substantial financial loss.

18. The Defendant did not bill, collect, and remit 911 Charges on thousands of telephone numbers that it designated as "in-bound only" numbers. Alabama law does not, however, exempt telephone numbers designated as "in-bound only" from 911 Charges.

19. In addition, the Defendant provided or sold over 3,000 telephone numbers to "resellers" who, in turn, sold the telephone numbers to end-user customers for which no 911 Charges were billed, collected or remitted to the District. Upon information and belief, the Defendant knew or should have known that these "reseller" customers were not billing, collecting, and remitting 911 Charges.

20. The Defendant submitted remittance forms to the District stating there were no exempt units or telephone numbers. In reality, however, the Defendant was, at one point, secretly "exempting" 63,039 telephone numbers that were active in Birmingham from 911 Charges. It did not disclose these "exempt units" on its remittance forms that it sent to the District.

21. By not billing and collecting 911 Charges for each 10-digit telephone number provided to VoIP users and by concealing its "exempt units" from the District, the Defendant was able to offer lower cost service to the detriment of the District and, as a result, gained a competitive advantage over other telephone

service providers that followed the law. The Defendant's actions deprived the District of critical financial resources.

22. The District's claims in this case relate to the Defendant's obligations to bill, collect, and remit 911 Charges before October 1, 2013.

## COUNT I
### (Violation of the ETSA)

23. The District repeats and reavers the foregoing allegations as if fully set forth herein.

24. As set forth herein, the Defendant has failed to bill, collect, and remit 911 Charges in accordance with the ETSA.

25. As a proximate consequence of the Defendant's violation of the ETSA, the District has suffered damages.

WHEREFORE, the District demands judgment against the Defendant for compensatory and punitive damages in an amount to be determined by a struck jury plus interest, attorneys' fees and costs.

## COUNT II
### (Negligence/Negligence *Per Se*/Gross Negligence/Recklessness)

26. The District repeats and reavers the foregoing allegations as if fully set forth herein.

27. The Defendant was under statutory and common law duties to bill, collect, and remit to the District the proper amount of 911 Charges.

28. The Defendant was negligent, grossly negligent, or reckless in failing to exercise reasonable care and breached these duties.

29. The Defendant's negligent, grossly negligent, or reckless breaches of their duties to exercise reasonable care proximately caused injury to the District, including loss of critical financial resources.

30. The Defendant's breach of the statutory duties imposed by Alabama law also constitutes negligence *per se*.

31. The District is within the class of persons that the ETSA was designed to protect and benefit as it is an intended recipient of the 911 Charges and relied upon payment of those charges to fund essential emergency service operations.

32. The injuries of the District are the precise injuries that the ETSA was designed to prevent, and those injuries hinder and impair the ability to provide 911 services in furtherance of the laws' stated purposes.

WHEREFORE, the District demands judgment against the Defendant for compensatory and punitive damages in an amount to be determined by a struck jury plus interest, attorneys' fees and costs.

## COUNT III
**(Breach of Fiduciary Duty)**

33. The District repeats and reavers the foregoing allegations as if fully set forth herein.

34.     During all relevant times, the Defendant was under a fiduciary duty to bill, collect, and remit to the District the 911 Charges upon each 10-digit telephone number supplied to users of VoIP technology and to bill, collect, and remit 911 Charges for all non-exempt customers.  These fiduciary duties were imposed upon the Defendant by Alabama Code § 11-98-1, *et seq.*, and § 11-98-5.1 in particular, the laws of other states, as well as by uniform common law in Alabama and other states.

35.     The fiduciary duty is derived from the special and confidential relationship between the District and the Defendant.

36.     The fiduciary relationship gives rise to a duty of care on the part of the Defendant whereby the Defendant was required to act with the utmost good faith, loyalty and honesty toward the District.  The ETSA creates a system to fund 911 emergency services that require ECDs, such as the District, to rely upon telecommunication suppliers, such as the Defendant, to act in good faith and with honesty in billing, collecting, and remitting the appropriate 911 Charges.

37.     The District had to rely on the Defendant to act in good faith and with honesty because the District is not aware of and had no way of calculating the number of ten-digit access numbers provided to customers of VoIP or similar service.  Therefore, the District could not know the actual amount of 911 Charges

that should be paid. The Defendant has sole and exclusive control of that information.

38. As the sole party possessing the information needed to determine the correct amount of 911 Charges that should have been paid, the Defendant was in a dominant position in relation to the District. As the Defendant determined the amount of 911 Charges received by the District, and as those 911 Charges were the principal source of operating capital funds, the Defendant effectively exercised a level of control over the District.

39. In relying on the Defendant to perform its statutory and common law obligations, the District trusted that the Defendant would act with utmost good faith, loyalty, and honesty toward the District.

40. The Defendant knowingly breached its fiduciary duties and the standard of care.

41. The Defendant's breach of their fiduciary duties of the standard of care injured the District, proximately causing a loss of significant revenue needed to fund essential emergency services.

WHEREFORE, the District demands judgment against the Defendant for compensatory and punitive damages in an amount to be determined by a struck jury plus interest, attorneys' fees and costs.

## COUNT IV
### (Wantonness)

42. The District repeats and reavers the foregoing allegations as if fully set forth herein.

43. The Defendant's conduct as described herein constitutes wantonness. By purposefully not billing and remitting the 911 Charges required by law, the Defendant acted with a reckless disregard for the wellbeing of the District with knowledge that the underpayment of 911 Charges would likely cause injury or damage.

44. The Defendant's wanton behavior proximately caused injury and damages to the District, including the loss of operating and capital funds and an impairment of the ability to provide 911 services.

WHEREFORE, the District demands judgment against the Defendant for compensatory and punitive damages in an amount to be determined by a struck jury plus interest, attorneys' fees and costs.

## COUNT V
### (Misrepresentation/Fraud)

45. The District repeats and reavers the foregoing allegations as if fully set forth herein.

46.     In connection with its duty to bill, collect and remit 911 Charges, the Defendant prepared and submitted to the District a signed 911 Charge remittance form each month along with its 911 Charge remittance payment.

47.     Through the 911 Charge Remittance Form, the Defendant represented the number of gross number of units (active telephone numbers) in the District and the exempt units for that particular month.

48.     The Defendant further represented on each 911 Charge Remittance Form that "all information provided herein is true, complete and accurate."

49.     Despite this certification, the Defendant negligently, recklessly or intentionally misrepresented to the District the number of "gross units" and the number of "exempt units." The Defendant significantly under-reported the number of telephone numbers and, therefore, made its 911 Charge remittances appear to be in compliance with the law when, in fact, they were not.

50.     Specifically, the Defendant misrepresented the "gross units" and the number of "exempt units" on its 911 Charge Remittance Forms as follows[1]:

| Shelby/ Jefferson | Date of Transmittal Form | Reporting Period | Represented # of Gross Units | Represented # of Exempt Units |
|---|---|---|---|---|
| Shelby | 11/10/2011 | 10/2011 | 168 | 0 |
| Jefferson | 11/10/2011 | 10/2011 | 1880 | 0 |
| Shelby | 12/09/2011 | 11/2011 | 187 | 0 |

---

[1] The Defendant submitted two 911 Charge Remittance Forms to the District with the same date each month—one for the portion of the District in Jefferson County and one for the portion of the District in Shelby County.

| | | | | |
|---|---|---|---|---|
| Jefferson | 12/09/2011 | 11/2011 | 1924 | 0 |
| Shelby | 01/16/2012 | 12/2011 | 187 | 0 |
| Jefferson | 01/16/2012 | 12/2011 | 1896 | 0 |
| Shelby | 02/11/2012 | 01/2012 | 239 | 0 |
| Jefferson | 02/11/2012 | 01/2012 | 1755 | 0 |
| Shelby | 03/09/2012 | 02/2012 | 189 | 0 |
| Jefferson | 03/09/2012 | 02/2012 | 1199 | 0 |
| Shelby | 04/13/2012 | 03/2012 | 240 | 0 |
| Jefferson | 04/13/2012 | 03/2012 | 2344 | 0 |
| Shelby | 05/16/2012 | 04/2012 | 229 | 0 |
| Jefferson | 05/16/2012 | 04/2012 | 2697 | 0 |
| Shelby | 06/12/2012 | 05/2012 | 369 | 0 |
| Jefferson | 06/12/2012 | 05/2012 | 2712 | 0 |
| Shelby | 07/11/2012 | 06/2012 | 288 | 0 |
| Jefferson | 07/11/2012 | 06/2012 | 2723 | 0 |
| Shelby | 08/10/2012 | 07/2012 | 313 | 0 |
| Jefferson | 08/10/2012 | 07/2012 | 2235 | 0 |
| Shelby | 09/11/2012 | 08/2012 | 283 | 0 |
| Jefferson | 09/11/2012 | 08/2012 | 3028 | 0 |
| Shelby | 10/16/2012 | 09/2012 | 322 | 0 |
| Jefferson | 10/16/2012 | 09/2012 | 2801 | 0 |
| Shelby | 11/09/2012 | 10/2012 | 434 | 0 |
| Jefferson | 11/09/2012 | 10/2012 | 3079 | 0 |
| Shelby | 12/11/2012 | 11/2012 | 377 | 0 |
| Jefferson | 12/11/2012 | 11/2012 | 3409 | 0 |
| Shelby | 01/11/2013 | 12/2012 | 386 | 0 |
| Jefferson | 01/11/2013 | 12/2012 | 3352 | 0 |
| Shelby | 02/13/2013 | 01/2013 | 381 | 0 |
| Jefferson | 02/13/2013 | 01/2013 | 3636 | 0 |
| Shelby | 03/15/2013 | 02/2013 | 384 | 0 |
| Jefferson | 03/15/2013 | 02/2013 | 3574 | 0 |
| Shelby | 04/12/2013 | 03/2013 | 387 | 0 |
| Jefferson | 04/12/2013 | 03/2013 | 3887 | 0 |
| Shelby | 05/12/2013 | 04/2013 | 584 | 0 |
| Jefferson | 05/12/2013 | 04/2013 | 3542 | 0 |
| Shelby | 06/11/2013 | 05/2013 | 528 | 0 |

| Jefferson | 06/11/2013 | 05/2013 | 3868 | 0 |
| Shelby    | 07/11/2013 | 06/2013 | 594  | 0 |
| Jefferson | 07/11/2013 | 06/2013 | 5951 | 0 |
| Shelby    | 08/13/2013 | 07/2013 | 554  | 0 |
| Jefferson | 08/13/2013 | 07/2013 | 5632 | 0 |
| Shelby    | 10/15/2013 | 09/2013 | 860  | 0 |
| Jefferson | 10/15/2013 | 09/2013 | 5696 | 0 |

51. Contrary to these representations, the District has learned that the Defendant had tens of thousands of unreported active telephone numbers within the District. The Defendant should have included these additional active telephone numbers within the "gross units" on its 911 Charge Remittance Forms. The amount of active telephone numbers or "units" for which the Defendant was not billing, collecting, and remitting a 911 Charge should have been disclosed as "exempt units." Instead, the Defendant did neither—it failed to include all the active telephone numbers in the "gross units," and it stated every single month that there were zero (0) "exempt units." Therefore, the Defendant grossly understated the number of gross units and grossly understated the number of exempt units.

52. Although all of the representations about gross and exempt units were false, the District has learned the extent of the under-reporting for the months of July and September, 2013. As shown in the table above and combining the amounts for Shelby and Jefferson, the Defendant reported there was a total of 6,186 "gross units" in July and 6,556 "gross units" in September, with zero (0)

"exempt units for both of those months. In truth, however, the Defendant had over 72,000 "gross units." Because the Defendant's service was VoIP, it should have been billing and remitting 911 Charges on virtually all of those active numbers. Instead, the Defendant concealed the existence of approximately 66,000 active telephone numbers by not identifying them as "exempt units."

53. The District reasonably relied on the false information provided by the Defendant on the 911 Charge Remittance Forms in accepting the 911 Charge remittances.

54. The information supplied by the Defendant was material to the District because the District relies upon 911 Charges to fund its operations, pay its employees, and provide emergency services. Moreover, the District has little to no information about the Defendant's service offerings within the district, other than what the Defendant provides to the District. As a result, the District had no means to independently verify or ensure the accuracy of the information supplied by the Defendant. The District was, therefore, at the mercy of the Defendant to act in good faith and with honesty and truthfulness in reporting information to the District.

55. Because of the lack of information available to the District about the Defendant's services in these areas, the District did not discover and could not have discovered the Defendant's misrepresentations until the Defendant provided

more complete and accurate information about their services during a recent audit conducted by the District.

56. The Defendant's false representations proximately caused injury and damages to the District, including the loss of operating and capital funds and an impairment of the ability to provide 911 services.

WHEREFORE, the District demands judgment against the Defendant for compensatory and punitive damages in an amount to be determined by a struck jury plus interest, attorneys' fees and costs.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

This the 2nd day of November, 2017.

    s/ W. Percy Badham III
W. Percy Badham III (ASB-2147-D51W)
pbadham@badhambuck.com
Brannon J. Buck (ASB-5848-K56B)
bbuck@badhambuck.com
Brett A. Ialacci (ASB-7679-E67I)
bialacci@badhambuck.com
Christopher B. Driver (ASB-9178-G39B)
cdriver@badhambuck.com

OF COUNSEL:
BADHAM & BUCK, LLC
2001 Park Place North, Ste. 500
Birmingham, Alabama 35203
Telephone: (205) 521-0036
Facsimile: (205) 521-0037

Freddy Rubio (ASB-5403-D62R)
frubio@rubiofirm.com
Leslie A. Wright (ASB-7190-E56W)
lwright@rubiofirm.com
RUBIO LAW FIRM, P.C.
438 Carr Ave, Suite 1
Birmingham, Alabama 35209
Telephone: (205) 443-7858
Facsimile: (205) 443-7853

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on the following via electronic mail on the 2nd day of November, 2017:

Rachel M. Lary
David A. Rich
Lightfoot, Franklin & White, LLC
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 581-0700
Facsimile: (205) 581-0799
srowe@lightfootlaw.com
rlary@lightfootlaw.com
drich@lightfootlaw.com

                                 s/ W. Percy Badham III
                                 OF COUNSEL